UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cr-20341-ALTMAN

**UNITED STATES OF AMERICA,**

*v.*

**RASHEED ALI, a/k/a "Fresh,"**

    *Defendant.*
_____/

## ORDER DENYING MOTION TO DISMISS

Rasheed Ali challenges the legality of his convictions on Count 1 (solicitation to commit a crime of violence), Count 3 (conspiracy to use a firearm during a crime of violence), and Count 4 (discharging a firearm in furtherance of a crime of violence) of the Superseding Indictment. Ali advances this argument in two places: his Motion for Acquittal and New Trial under Rules 29 and 33 and his objections to the PSI. *See* Ali's Motion for Acquittal [ECF No. 295] at 8–11; Ali's PSI Objections [ECF No. 337] at 9–14. His position—stated plainly—is that his conviction for interstate stalking under 18 U.S.C. § 2261A(1)(A) *doesn't* constitute a crime of violence under 18 U.S.C. § 16 and § 924(c)(3) because it doesn't necessarily require the "use, attempted use, or threatened use of physical force against the person or property of another[.]" Motion for Acquittal at 11; *see also ibid.* ("The commission of the offense under § 2661A(1) simply does not have, as an element, the use or threatened use of force because it can undoubtedly be committed by completely nonviolent, nonthreatening, conduct."); PSI Objections at 12 ("[A]n element requiring intent to kill—or even travel with intent to kill—still does not satisfy the force element clause[.]"). For the following reasons, we disagree.[1]

---

[1] Ali separately argues that the evidence against him was insufficient to sustain his conviction on any of the seven counts of the Superseding Indictment. For the reasons we'll outline at the sentencing

I.  **The Modified Categorical Approach Applies Here**

To determine whether an offense constitutes a crime of violence, we first decide whether to apply the "categorical approach" or the "modified categorical approach." "Under the categorical approach, we do not look to the specific conduct underlying the defendant's conviction. Instead, we must presume that the conviction rested upon nothing more than the least of the acts criminalized by the statute. So, we look to the elements of the statute of conviction and determine if the least of the acts criminalized qualifies as a crime of violence. If it does not, a conviction under the statute cannot qualify as a crime of violence." *United States v. Harrison*, 56 F.4th 1325, 1331 (11th Cir. 2023) (cleaned up).

Sometimes, however, a statute is "divisible" because it "lists multiple, alternative elements, and so effectively creates several different crimes." *Descamps v. United States*, 570 U.S. 254, 264 (2013). If a statute is divisible, we must use the "modified categorical approach"—which "is simply the categorical approach applied to one of a divisible statute's listed crimes." *United States v. Ferguson*, 100 F.4th 1301, 1308 (11th Cir. 2024). Courts can "usually . . . determine whether a statute is divisible by simply reading its text and asking if its elements or means are drafted in the alternative." *United States v. Estrella*, 758 F.3d 1239, 1246 (11th Cir. 2014). This distinction between elements and means is important. Elements "are the constituent parts of a crime's legal definition," since they "are what the jury must find beyond a reasonable doubt to convict the defendant[.]" *Mathis v. United States*, 579 U.S. 500, 504 (2016). Means, by contrast, "are mere real-world things—extraneous to the crime's legal requirements"—and need not "be found by a jury [or] admitted by a defendant." *Ibid.* "If the statute lists alternative 'elements,' it is considered 'divisible,'" "[b]ut if a statute merely lists 'various factual means' of committing a single offense, then the statute is considered 'indivisible,' and that indivisible set of elements will be the basis

---

hearing, we **DENY** Ali's insufficiency arguments as to Counts 1−6 of the Superseding Indictment but **GRANT** his motion as to Count 7.

2

of the defendant's conviction." *United States v. Gundy*, 842 F.3d 1156, 1162 (11th Cir. 2016) (cleaned up).

Section 2261A consists of four subsections: (1)(A), (1)(B), (2)(A), and (2)(B). The Government charged Ali with violating subsection (1)(A). *See* Superseding Indictment [ECF No. 102] at 2. As an initial matter, the statute is plainly divisible between § 2261A(1) and § 2261A(2). Section 2261A(2) requires the government to prove that the defendant "use[d] the mail, any interactive computer service or electronical communication service or electronic communication system or interstate commerce, or any other facility of interstate or foreign commerce[.]" This element is entirely absent from § 2261A(1), which requires the government to prove that the defendant "travel[ed] in interstate or foreign commerce or [was] present within the special maritime and territorial jurisdiction of the United States, or enter[ed] or le[ft] Indian country[.]" Since § 2261A(1)'s elements are different from § 2261A(2)'s, the interstate-stalking statute is (at a minimum) divisible into two crimes. *See Howard*, 742 F.3d at 1346 ("[S]entencing courts should usually be able to determine whether a statute is divisible by simply reading its text and asking if its elements or means are drafted in the alternative."); *see also, e.g.*, *United States v. Abarca*, 2024 WL 1643174, at *6 (S.D. Fla. Mar. 26, 2024) (Torres, Mag. J.) ("The language of the Section 2261A(2) clearly sets out two distinct crimes under subsection (A) and (B), which are both distinct from the crime set out under Section 2261A(1). Section 2261A(1), for example, 'requires travel in interstate or foreign commerce, presence within the special maritime and territorial jurisdiction of the United States, or entry into or exit from Indian country,' all of which Section 2261A(2)(A) does not require."), *report and recommendation adopted*, 2024 WL 1643174 (S.D. Fla. Apr. 16, 2024) (Gayles, J.); *United States v. Bacon*, 2021 WL 5051364, at *12 (D. Del. Nov. 1, 2021) ("For example, § 2261A(1)(A) is different from § 2261A(2)(A) because § 2261A(1)(A) requires travel in interstate or foreign commerce, presence within the special maritime and territorial jurisdiction of the United States, or entry into or exit from Indian country, while § 2261A(2)(A) does not.").

But that's not the *only* place in which the plain language of this statute evinces its divisibility. Subsections (1)(A) and (1)(B)—and by extension (2)(A) and (2)(B)—*likewise* require proof of distinct elements, so § 2261A is in fact divisible into *four* separate crimes. As then-Magistrate Judge Goodman explained a few months ago, "[t]he wording of the statute alone makes plain that the conduct enumerated in Subsections (A) and (B) involve different elements." *United States v. Johnson*, 2025 WL 1520055, at *6 (S.D. Fla. May 7, 2025) (Goodman, Mag. J.), *report and recommendation adopted*, 2025 WL 1517219 (S.D. Fla. May 28, 2025) (Gayles, J.). Subsection (1)(A) requires proof of "conduct that places [a] person in reasonable fear of the death of, or serious bodily injury [to]," himself or another, whereas subsection (1)(B) only requires proof of conduct that "causes, attempts to cause, or would reasonably be expected to cause substantial emotional distress to a person[.]" 18 U.S.C. § 2261A(1)(A)–(B). Put simply, subsection (1)(A) requires the government to show that the defendant's conduct caused a "fear of death or serious bodily injury," while subsection (1)(B) obligates the government to prove that the defendant's conduct caused or attempted to cause "emotional distress." "These are alternative elements, rather than means, because they require different actions." *Johnson*, 2025 WL 1520055, at *6; *cf. Abarca*, 2024 WL 1643174, at *6 ("Similarly, Section 2261A(2)(A) requires a distinct element from that of Subsection 2(B)—that reasonable fear of death or serious bodily injury result from the defendant's course of conduct, rather than substantial emotional distress, which is criminalized under Subsection 2(B).").

Resisting the statute's plain text, Ali urges us to adopt the Northern District of Oklahoma's reasoning in *United States v. Minners*, 2020 WL 4275040 (N.D. Okla. July 24, 2020). *See* Reply to Motion for Acquittal [ECF No. 315] at 3–6. The *Minners* Court (it's true) found that § 2261A is "indivisible" because "it does not list alternative ways for committing interstate stalking" and "has only one set of elements[.]" 2020 WL 4275040, at *5. But *Minners* was analyzing a version of § 2261A from *twenty-five years* ago, and the court was careful to note that the "statute has since been amended and is now

4

broader." *Id.* at *4 n.5. Based on these material changes to the statute, every federal judge to have addressed this issue after *Minners* has concluded that the statute *is* divisible. *See, e.g., United States v. Griffin*, 2022 WL 2071054, at *5 (E.D. Mich. June 8, 2022) ("[*Minners* is] distinguishable from the present case [because it] analyzed a prior version of § 2261A. . . . [The amended] language eliminates any doubt that, for conviction under § 2261A, a defendant must not only travel, but also engage in some kind of volitional conduct that places the victim in reasonable fear of death or injury—it is not sufficient that such fear may merely result from the travel itself."). And that's plainly right. Congress substantially amended § 2261A *twice* since the 2000 version of the statute at issue in *Minners*: once in 2013 to "add[ ] a 'conduct' requirement . . . and split[ ] what some courts had previously treated as a single, indivisible offense into alternative elements"; and again in 2018 when "it expanded the list of protected groups of victims under Section 2261A's Subsection (1)(A) and (2)(A), but specifically refused to do so for Subsection (2)(B)." *Johnson*, 2025 WL 1520055, at *6 (first citing Pub. L. 113-4, § 107, 127 Stat. 54, 77 (2013); and then citing Pub. L. 115-334, § 12502, 132 Stat. 4490, 4982 (2018)). And, as we've indicated, *no federal court* has suggested that § 2261A(1) is indivisible since these amendments were passed, and we won't be the first to do so given the amended statute's unambiguous text. We therefore conclude that § 2261A is divisible into four separate crimes, and that we must apply the modified categorical approach to the specific crime Ali was charged with committing: a violation of § 2261A(1)(A).

## II.    18 U.S.C. § 2261A(1)(A) is a Crime of Violence

In the second part of our analysis, we ask whether § 2261A(1)(A) has "as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" 18 U.S.C. § 16(a). Section 2261(A)(1)(A) requires the government to prove three elements: (1) that the defendant "traveled in interstate or foreign commerce"; (2) that the defendant had "the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate

another person"; and (3) that, "in the course of, or as a result of, such travel [the defendant] engaged in conduct that placed that person in reasonable fear of the death of, or serious bodily injury to" certain enumerated persons or animals. *United States v. Gonzalez*, 905 F.3d 165, 179–80 (3d Cir. 2018) (quoting 18 U.S.C. § 2261A(1)(A)). Ali doesn't dispute that these are the three elements of the crime, but he claims that "[n]one of these elements requires, much less as a categorical matter, the use, attempted use, or threatened use of physical force against the person or property of another." PSI Objections at 10.

While this argument may have carried the day before § 2261A's 2013 and 2018 amendments, Ali's reading of the current statute doesn't conform to its text. As it's currently written, the statute requires the Government to prove *both* that, by soliciting Serrano and Jimenez to murder Alex Vega, Ali intended to kill, injure, harass, intimidate, or surveil (with the intent to kill, injure, harass, intimidate, or surveil) Vega, *and* that Ali's conduct placed Vega in reasonable fear of death or serious bodily injury. *See United States v. Conlan*, 786 F.3d 380, 386 (5th Cir. 2015) ("To violate [§ 2261A] one must intend to cause victims serious harm and in fact cause a reasonable fear of death or serious bodily injury.").

Ali says that § 2261A(1)(A) "prescribes no *mens rea* requirement" because it could criminalize reckless conduct. PSI Objections at 11, 13 (citing *United States v. Borden*, 593 U.S. 420, 429 (2021)). But this argument is belied by the text of § 2261A(1)(A)—which plainly requires the defendant to have the *specific intent* to kill, injure, harass, intimidate, or surveil a victim. *Cf. United States v. Shrader*, 675 F.3d 300, 313 (4th Cir. 2012) ("A defendant may violate [§ 2261A(2)] by acting with the specific intent to cause a person to fear for the life and limb of another[.]"); *United States v. Storme*, 2021 WL 3674611, at *5 (N.D. Ill. Aug. 19, 2021) (holding that § 2261A "requires proof of specific intent to commit an unlawful act"). The Eleventh Circuit has also been clear that "offenses that require a *mens rea* of knowledge or intent" require more than mere recklessness and *can* thus constitute a crime of violence.

*Somers v. United States*, 66 F.4th 890, 895 (11th Cir. 2023). We therefore find that § 2261A(1)(A) *doesn't* criminalize mere reckless conduct.

Ali next analogizes § 2261A(1)(A) to the federal kidnapping statute, 18 U.S.C. § 1201(a). *See* PSI Objections at 11. In *United States v. Gillis*, the Eleventh Circuit concluded that § 1201(a) *isn't* categorically a crime of violence because it criminalizes "kidnapping by means of inveiglement or decoy[.]" 938 F.3d 1181, 1206 (11th Cir. 2019). Since the Eleventh Circuit envisioned a scenario in which a "federal kidnapping crime can be committed by mere inveiglement and holding the victim by either physical or psychological force[,]" it agreed with the defendant that § 1201(a) *didn't* satisfy the categorical approach and *isn't* a crime of violence. *Id.* at 1210. Ali urges us to apply that reasoning here, suggesting that § 2261A(1)(A) can be satisfied by mere "psychological harassment." PSI Objections at 13. After all, as Ali correctly observes, "intent to harass as used in this statute is not an element divisible from intent to kill, as both are mental-state means." *Id.* at 12. To illustrate this perceived problem, Ali suggests that the statute's use of the term "harassment" covers "following someone repeatedly; hiding in the bushes by their house; or contacting them to a degree that a reasonable person would view as deeply unstable and fear-producing, but which involves no physical force." *Ibid.*

We're not persuaded. Unlike the federal kidnapping statute, § 2261A(1)(A) requires the government to show that the defendant's intended act "place[d] [a] person in reasonable fear" of death or serious bodily injury. This difference alone renders the *Gillis* analysis inapposite here. *Cf. Gillis*, 938 F.3d at 1203 ("[The two] elements of § 1201(a) kidnapping are: (1) unlawfully seizing, confining, inveigling, decoying, kidnapping, abducting, or carrying away the victim; and (2) holding the victim for ransom or reward or otherwise."). Still, we acknowledge Ali's broader point that the modified categorical approach reduces our analysis down to one dispositive question: Can an act that's intended to harass a victim place that victim in reasonable fear of death or serious bodily injury *without* the use, attempted use, or threatened use of force? Ali's hypotheticals invite us to consider whether some

person *might* fear for his (or her) life knowing that a defendant was consistently "following" him or "hiding in the bushes by [his] house[.]" PSI Objections at 13. But these far-fetched hypotheticals miss the point. It's true that, in "deciding whether an element requires the use of such force, we focus on the least culpable conduct criminalized by the statute." *United States v. Deshazior*, 882 F.3d 1352, 1357 (11th Cir. 2018) (cleaned up). "However, we resist engaging in florid exercises of legal imagination which pose highly improbable ways of violating the statute." *Ibid*. So, while it's possible that a person *might* fear for his or her life in one or more of the scenarios Ali has outlined, that doesn't mean "that a reasonable person facing the same circumstance would react" that way. *United States v. Oury*, 2019 WL 8440692, at *4 (S.D. Ga. Dec. 10, 2019) (cleaned up).

Hypotheticals aside, though, we agree with then-Magistrate Judge Goodman that it's "impossible to conceptualize an instance where an individual engages in a 'course of conduct' that puts someone in 'reasonable fear of the death of or serious bodily injury' [to himself or another] without engaging in conduct that, at minimum, threatens the use of physical force to a person." *Johnson*, 2025 WL 1520055, at *10; *see also Bacon*, 2021 WL 5051364, at *14 ("If the hypothetical defendant intentionally communicates with the victim in a way that causes reasonable fear of death or serious bodily injury, that communication necessarily involves at least the threatened use of physical force."); *United States v. Elkins*, 725 F. Supp. 3d 570, 576 (N.D. Tex. 2024) ("The Court has a difficult time imagining a case where an actor commits a violation under §§ 2261A(2) and 2261(b)(1)–(3), with the requisite level of intention and harm, and does not also intentionally attempt or threaten to use force.").

The Eleventh Circuit's decision in *Somers* supports this conclusion. In that case, the Eleventh Circuit found that Florida's aggravated-assault statute "has as an element the use, attempted use, or threatened use of physical force against the person of another" because it requires "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent

8

ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent[.]" *Somers*, 66 F.4th at 894 (quoting FLA. STAT. § 784.011(1)). Again, to crib from then-Magistrate Judge Goodman's well-reasoned opinion, § 2261A(1)(A) bears "significant similarities" to Florida's aggravated-assault statute. "Like assault, [§ 2261A(1)(A)] demands a high degree of specific intent (the 'intent to kill, injure, harass, and intimidate') and pairs that with conduct that places the victim in reasonable fear of death or serious bodily injury. A statute that demands an intentional act causing a victim to fear death or serious injury was deemed a crime of violence in *Somers*, and [we see] no reason why the same result would not apply here." *Johnson*, 2025 WL 1520055, at *10.

We therefore find that § 2261A(1)(A) is a crime of violence because even the "least culpable" conduct the statute criminalizes *still* requires a defendant to use, attempt to use, or threaten to use physical force.

\* \* \*

After careful review, in short, we **DENY in part** Ali's Motion for Acquittal [ECF No. 295] as to Counts 1−6 of the Superseding Indictment, **GRANT in part** the Motion for Acquittal [ECF No. 295] as to Count 7, and **OVERRULE** Ali's PSI Objections to the extent he argues that we must vacate his convictions on Count 1, 3, and 4 because interstate stalking isn't a crime of violence.

**DONE AND ORDERED** in the Southern District of Florida on October 16, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record